

EOD
08/28/2007

IN THE UNITED STATES BANKRUPTCY COURT
FOR THE EASTERN DISTRICT OF TEXAS
SHERMAN DIVISION

| | | |
|---|---|---|
| In re: | § | |
| | § | |
| BRENDA LYNN KNOLL, | § | Case No. 05-45814 |
| | § | (Chapter 7) |
| Debtor. | § | |
| | § | |
| RAYMOND KNOLL, | § | |
| | § | |
| Plaintiff, | § | |
| | § | |
| v. | § | Adv. No. 05-04259 |
| | § | |
| BRENDA LYNN KNOLL, | § | |
| | § | |
| Defendant. | § | |

## FINDINGS OF FACT AND CONCLUSIONS OF LAW

Raymond Knoll (the "Plaintiff") initiated this adversary proceeding by filing an ORIGINAL COMPLAINT TO DETERMINE DISCHARGEABILITY OF DEBT (the "Complaint") on December 12, 2005. In the Complaint, the Plaintiff seeks a judgment that the obligations assumed by his ex-wife, Brenda Lynn Knoll (the "Defendant"), in an agreed final decree of divorce are not dischargeable in bankruptcy. The Court tried the Complaint on April 17, 2007. Having considered the Complaint, the evidence presented at trial, and the applicable law, the Court makes the following findings of fact and conclusions of law pursuant to Federal Rule of Civil Procedure 52(a), as applied to this adversary proceeding by Federal Rule of Bankruptcy Procedure 7052:[1]

---

[1] To the extent any of the following findings of fact are construed as conclusions of law, they are hereby adopted as such. To the extent any of the following conclusions of law are construed as findings of fact, they are hereby adopted as such.

# I. FINDINGS OF FACT

## A. General Factual and Procedural Background

1.	The Plaintiff and Defendant divorced in December 2004. The 367th District Court of Denton County, Texas entered a Final Decree of Divorce on December 14, 2004 in Cause No. 2004-50531-367 (the "Divorce Decree").

2.	The Plaintiff and the Defendant have a son and a daughter together. Their daughter was 19 years-old and in her second year of college at Texas A&M University at the time of trial. Their son was 15 years-old and in high school.

3.	Pursuant to the Divorce Decree, the Defendant was awarded custody of the children. The Divorce Decree required the Plaintiff to pay the Defendant $900 per month in child support. However, the Plaintiff failed to make a child support payment to the Defendant in February 2007, and his wages and tax return were being garnished to make up for the missed payment at the time of trial.

4.	Certain credit card and other debts were allocated to the Plaintiff in the Divorce Decree. Additionally, the Defendant agreed to assume sole liability for the following debts (the "Debts"):

   a. Bank of America credit card ending in 4477 (the "Bank of America Card")
   b. Discover credit card ending in 4322 (the "Discover Card")
   c. Citibank credit card ending in 8796 (the "Citibank Card")
   d. Any and all debts, charges, liabilities, and other obligations incurred solely by the Defendant from and after April 13, 2004, except as otherwise provided in the Divorce Decree
   e. All encumbrances, ad valorem taxes, liens, assessments, or other charges due or to become due on the real and personal property awarded to the wife in the Divorce Decree except as otherwise provided in the Divorce Decree

*See* Divorce Decree at p.20, ¶¶W-1, W-3 and W-4.

2

5. The Defendant initiated the bankruptcy case associated with this adversary proceeding on September 30, 2005 (the "Petition Date") by filing a voluntary petition for relief under Chapter 7 of Title 11 of the United States Code (the "Bankruptcy Code"). In her answer to the Plaintiff's Complaint, the Defendant denies that her liability for the Debts is not dischargeable. The Defendant also asserts the affirmative defenses set forth in §523(a)(15)(A) and (B) of the Bankruptcy Code.

6. At trial, there was no evidence of any amounts owing on the non-credit card debts allocated to the Defendant in the Divorce Decree. With respect to the credit card debts, the Defendant has not made any payments since at least the Petition Date. The balance on the Bank of America Card was approximately $20,000 on the Petition date and had risen to approximately $24,000 at the time of trial. The balance on the Discover Card was $11,292.29 of the Petition Date.[2] It appears that there was no balance remaining on the Citibank Card, which was not listed in the Defendant's bankruptcy schedules.

### B. The Defendant's Financial Background

7. At the time the Divorce Decree was entered in December 2004, the Defendant was working for the Denton Independent School District as well as Target Corporation. She was working as a leasing director for Province Place Apartments when she filed for bankruptcy in September 2005. She earned $10 an hour and worked 40 hours a week as a leasing director, for a gross monthly income of $1,600.

8. The Defendant testified, credibly, that she filed for bankruptcy because

---

[2] The only Discover credit card that the Defendant listed in her bankruptcy schedules was identified as ending in 4332, not 4322. The Court believes that this was a typographical error. Moreover, the Court has taken the possibility that there is no balance owing on the Discover Card ending in 4322 into consideration in its legal analysis.

3

she was unable to pay her monthly bills as they came due. After filing for bankruptcy, the Defendant left her job as a leasing agent to take a manager-in-training position at Gamestop. When no manager position opened up for her at Gamestop, she was demoted to assistant manager. She worked as an assistant manager for seven months before resigning in lieu of termination due to insufficient sales. At the time of her resignation, which occurred approximately two weeks prior to trial, she was making $10 per hour and was working less than forty hours of work per week.

9. The Defendant has never earned more than $24,000 per year. At the time of trial, the Defendant had no regular income other than what she was receiving in child support from her husband. She had borrowed approximately $10,000 from her mother to help pay her living expenses, and she testified, credibly, that she would likely have to request another loan from her mother to continue to pay her living expenses.

10. The parties' daughter pays for most of her college expenses through grants, scholarships and/or loans. The Defendant has helped her pay for books and food. Due, in part, to his daughter's refusal to accept any financial assistance from him, the Plaintiff has not provided any funds to his daughter or ex-wife to help pay for his daughter's college-related expenses.

11. The Defendant was attending college classes part-time in an effort to improve her employment prospects at the time of trial. (She was paying for her college tuition with funds obtained from grants.) She had recently earned her real estate license but did not yet have a job in the real estate industry. It did not appear from the record that the Defendant's gross income would surpass $24,000 per year in the near future.

12. According to her bankruptcy schedules, the Defendant owns furniture,

4

clothing and other personal property worth approximately $16,370. Her total unsecured debt on the Petition Date was $61,304.52, which included $30,750.85 in credit card obligations she assumed under the Divorce Decree. At the time of Trial, the Defendant was living in an apartment in an income-restricted community.

13. The Defendant's monthly expenses on the Petition Date were $2,304.85, and her monthly net income was $2,320, which included $900 per month in child support. The Defendant's monthly expenses did not include payments on the debts assigned to the Defendant pursuant to the Divorce Decree. At trial, the Defendant testified that her monthly expenses have increased since the Petition Date due to higher utility and gas costs as well as her daughter's university expenses and auto repair expenses. The Defendant had no disposable income on the Petition Date or at the time of trial.

14. Approximately two months before trial, the Defendant inherited $28,000 from her grandmother (the "Inheritance"). The Defendant used $12,000 of this Inheritance to repay a post-petition loan from her mother. The Defendant used $9,800 of the Inheritance to pay down credit card debt that she had incurred after the Petition Date (the "Post-petition Credit Card Debt") in order to pay her living expenses. The Defendant used part of the Inheritance to pay for the classes to earn her real estate license, and she used the remainder to pay her regular living expenses.

### D. The Plaintiff's Financial Background

15. At the time of trial, the Plaintiff was employed by Murphy Oil in Houston at a salary of $75,000 per year plus potential bonuses. Murphy Oil had provided the Plaintiff with a company vehicle for business purposes. Additionally, the Plaintiff had

5

recently purchased a 2007 Mitsubishi Eclipse for personal use.

16. The Plaintiff had been employed at Murphy Oil for approximately two months at the time of trial. During 2006, the Plaintiff earned $77,000 – $78,000 at his previous job.

17. The Plaintiff was awarded the parties' former marital home in Denton, Texas (the "Denton Home") pursuant to the Divorce Decree. The Denton Home is approximately 4,013 square feet.

18. The Plaintiff also owns a second, smaller home in Richardson, Texas (the "Richardson Home"). The Plaintiff purchased the Richardson Home with the intention of selling the Denton Home and reducing his expenses. However, the Plaintiff testified that he has been unable to sell the Denton Home because its value is less than the mortgage on the home.

19. At the time of trial, Plaintiff was in the process of relocating to Houston for his new job at Murphy Oil. The Richardson Home was listed for sale for $187,900.

20. At the time of trial, the Plaintiff was leasing the Denton Home for $1,900 per month. The Plaintiff was paying $1,095 per month on the mortgage for the Denton Home as well as approximately $700 - $800 per month in taxes and insurance. The Plaintiff also was paying a monthly "management fee" of $178 on the Denton Home. The Plaintiff estimated that he was losing approximately $100 per month due to his continued ownership of the Denton Home.

21. At the time of trial, the Plaintiff's gross monthly income was $6,250. The Plaintiff's monthly expenses included the following:

    a. $900 – child support
    b. $501.69 – Capital One credit card payment

      c. $467 – American Express credit card payment
      d. $170 – Chase credit card payment
      e. $96 – Discover credit card payment
      f. $100 – net loss on Denton Home lease income, mortgage payments, taxes and insurance, and "management fee"
      g. $1,684 – mortgage, taxes and insurance on Richardson Home
      h. $235 – net payment on Mitsubishi Eclipse after rebate
      i. $125 – auto insurance
      j. $1,203 – taxes and Medicare deductions
      k. $80 – cable and internet
      l. $65 – cell phone[3]
      m. $400 – health and dental insurance for the Plaintiff and the parties' children

After taking into account these expenses, the Plaintiff had approximately $223.31 per month remaining to pay for food, utilities and gasoline. He had little or no disposable income at the time of trial.

## II. CONCLUSIONS OF LAW

### A. Jurisdiction

22. This Court has jurisdiction over this proceeding pursuant to 28 U.S.C. § 1334. The Court has the authority to enter a final judgment in this adversary proceeding since it constitutes a core proceeding as contemplated by 28 U.S.C. § 157(b)(2)(I).

### B. Section 523(a)(15)

23. The Bankruptcy Abuse Prevention and Consumer Protection Act of 2005 (the "BAPCPA") significantly limited the dischargeability of debts under §523(a)(15) of the Bankruptcy Code. The revisions made to the Bankruptcy Code by BAPCPA apply to cases filed after October 17, 2005. *See* BAPCPA, 109 P.L. 8 § 1501(b)(1) ("the amendments made by this Act shall not apply with respect to *cases commenced* under title 11, United States Code, before the effective date of this Act.") (emphasis added); *see also, In re Kilroy,* 354 B.R. 476, 496-97 (Bankr. S.D. Tex. 2006). Because the Defendant

---

[3] The Plaintiff testified that his internet and cell phone expenses are required for his employment.

commenced her bankruptcy case prior to BAPCPA's effective date, the Court looks to the pre-BAPCPA version of §523(a)(15) in determining the parties' dispute.

24. The relevant version of §523(a)(15) provides that debts that are not support obligations but which were incurred in the course of a divorce are nondischargeable unless either (1) the debtor lacks the ability to pay the debt, or (2) discharging the debt would result in a benefit to the debtor that outweighs the detrimental consequences to the spouse, former spouse or child of the debtor. The pre-BAPCPA version of §523(a)(15) of the Bankruptcy Code specifically provides that:

> (a) A discharge under section 727 … of this title does not discharge an individual debtor from any debt –
> (15) not of the kind described in paragraph (5) that is incurred by the debtor in the course of a divorce or separation or in connection with a separation agreement, divorce decree or other order of a court of record, a determination made in accordance with State or territorial law by a governmental unit unless –
> (A) the debtor does not have the ability to pay such debt from income or property of the debtor not reasonably necessary to be expended for the maintenance or support of the debtor or a dependent of the debtor and, if the debtor is engaged in a business, for the payment of expenditures necessary for the continuation, preservation, and operation of such business; or
> (B) discharging such debt would result in a benefit to the debtor that outweighs the detrimental consequences to a spouse, former spouse, or child of the debtor[.]

11 U.S.C. §523(a)(15).

25. Section 523(a)(15) was originally enacted as a part of the Bankruptcy Reform Act of 1994. Congress thereby sought "to lessen the chance that a divorce obligee's claims might slip through Section 523(a)(5)'s cracks and be discharged unjustly." *Thomas v. Thomas (In re Thomas)*, 334 B.R. 331, 335 (Bankr. E.D. La. 2005). "Section 523(a)(15) serves to make all debts related to a divorce or separation subject to a

8

presumption of nondischargeability ….." *Id.* at 336. *See also Gamble v. Gamble (In re Gamble)*, 143 F.3d 223, 225 (5th Cir. 1998); *In re Dennis*, 330 F.3d 696, 704 (5th Cir. 2003).

26. In an action seeking to establish the dischargeability of a debt under §523(a)(15), the plaintiff has the initial burden of establishing that §523(a)(15) applies. *See In re Gamble*, 143 F.3d at 226. Should the plaintiff carry this burden, the burden shifts to the defendant to prove that one of the exceptions listed in §§523(a)(15)(A) and (B) applies. *In re Gamble*, 143 F.3d at 226; *Calabrese v. Calabrese (In re Calabrese)*, 277 B.R. 357, 361 (Bankr. N.D. Ohio 2002); *Hart v. Molino (In re Molino)*, 225 B.R. 904, 907 (6th Cir. B.A.P. 1998). The preponderance of the evidence standard applies to discharge exceptions. *See Grogan v. Garner*, 498 U.S. 279, 287 (1991).

27. Here, the parties have stipulated that the Defendant's liability for the Debts under the Divorce Decree is in the nature of a property settlement and was incurred in the course of a divorce. The Defendant's liability for the Debts is not in the nature of alimony, maintenance or support. The Court, therefore, concludes that the Plaintiff has sustained his burden of proving that §523(a)(15) governs the dischargeability of the Debts. *See In re Gamble*, 143 F.3d at 225-226. The burden now shifts to the Defendant to establish, by a preponderance of the evidence, that one of the exceptions listed in §523(a)(15) exists in this case. *Id*.

*1. Section 523(a)(15)(A)*

28. Bankruptcy Code §523(a)(15)(A) requires the Defendant to prove that she does not have the ability to pay the Debts from her disposable income or property. *See* 11 U.S.C. §523(a)(15)(A); *In re Gamble*, 143 F.3d at 226. The relevant time for

9

evaluating her ability to pay the Debts is the date of the trial in the adversary proceeding. *See Thomas,* 334 B.R. at 336. In its analysis, the Court "must examine the debtor's present circumstances and future financial prospects including an ability to make minimum monthly payments, rather than a snapshot of the debtor's current ability to pay." *In re Garza*, 217 B.R. at 205 (citing *In re Schmitt*, 197 B.R. 312, 316 (Bankr. W.D. Ark. 1996); *In re Florio*, 187 B.R. 654, 657 (Bankr. W.D. Mo. 1995)).

29. In determining a debtor's "ability to pay" under section 523(a)(15)(A), most courts rely on the "disposable income test" of §1325(b)(2) of the Bankruptcy Code, which contains language mirroring that of section 523(a)(15).[4] *See, e.g., Garza*, 217 B.R. at 205; *In re Pino*, 268 B.R. 483, 496-97 (Bankr. W.D. Tex. 2001). Under the disposable income test, the debtor's budgeted expenses, assuming they are reasonably necessary, are subtracted from the debtor's income and determine if there is any money left. *See id.* (collecting authority); *see also In re Gamble*, 143 F.3d at 226. Essentially, a debtor has the ability to pay a §523(a)(15) obligation if she "has sufficient disposable income to pay all or a material part of a debt within a reasonable amount of time." *In re Osborne*, 262 B.R. 435, 444 (Bankr. E.D. Tenn. 2001).

30. Some courts have been reluctant to use the disposable income test set forth in §1325(b)(2) when analyzing a debtor's ability to pay in relation to §523(a)(15), reasoning that parties to a divorce have been known to sacrifice their own well-being to spite their ex-spouses. *See In re Garza*, 217 B.R. at 205. "However, a proper application of the test [in a §523(a)(15)(A) inquiry] should take into account the prospective income

---

[4] Section 1325(b)(2) defines "disposable income" as "income which is received by the debtor and which is not reasonably necessary to be expended-(A) for the maintenance or support of the debtor or a dependent of the debtor...and (B) if the debtor is engaged in business, for the payment of expenditures necessary for the continuation, preservation, and operation of such business."

10

that the debtor *should* earn and the debtor's reasonable expenses." *Id.* (emphasis added) (citing *In re Cardillo*, 170 B.R. 490, 491 (Bankr. D. N.H. 1994)). "In view of the Congressional mandate that property settlement obligations should not be discharged, a debtor should not be allowed to manipulate his/her financial condition to the detriment of a former spouse." *Gamble v. Gamble (In re Gamble)*, 196 B.R. 54, 58 (Bankr. N.D. Tex. 1996), *aff'd*, 143 F.3d 223 (5th Cir. 1998) (citing *In re Florio*, 187 B.R. at 657).

31. In this case, the Defendant has not manipulated her financial condition to spite the Plaintiff. She has, in fact, attempted to improve her financial condition by obtaining a realtor's license and attending college. Nonetheless, her financial condition has deteriorated since the Petition Date due to her unemployment as well as increases in her utility costs. Her reasonable monthly expenses were more than $2,300 at the time of trial (exclusive of any payments due on the Debts), which is more than the Defendant has ever earned on a monthly basis and more than her monthly income (after taxes) as of the Petition Date.[5]

32. There is no time period specified in the Divorce Decree for repayment of the Debts. Both parties acknowledge that the rate of interest on the Bank of America Card is quite high –at least 18%. Given that the Defendant cannot make minimum payments on the credit card portion of the Debts, the amount of the Debts will simply continue to increase for the foreseeable future. The Defendant will not be able to repay these Debts in the foreseeable future or over any readily ascertainable amount of time.

33. With respect to the Defendant's decision to use her Inheritance to pay her

---

[5] For purposes of this analysis, the Court has referred to the Defendant's historical income and her income as of the Petition Date as a measure of how much the Plaintiff can reasonably expect to earn in the future. The Court did not rely on the Defendant's income as of the date of trial because the Defendant was unemployed at that time. It is reasonable, however, to assume that the Defendant will return to work.

11

post-petition debts, the Plaintiff's counsel attempted to draw an analogy to the debtor's gift of a Camaro to his nephew in *In re Thomas*, 348 B.R. at 337, in his closing arguments. The debtor in *Thomas* gave away his Camaro, which was his single most valuable asset, for no consideration. In contrast, the Defendant in this case used her Inheritance to repay post-petition debts she had incurred in a good faith effort to meet her living expenses. The Defendant did not incur these debts, or repay them, as part of a scheme to frustrate the Plaintiff. Moreover, if the Court were to find Defendant's use of her Inheritance to repay her post-petition debts to be impermissible, the Court would essentially be requiring the Defendant to pay the Debts set forth in the Divorce Decree ahead of her basic living expenses.

34. For all the foregoing reasons, the Court concludes that the Defendant is unable to pay the Debts and will remain unable to do so for the foreseeable future. The Defendant is likely to incur more debt simply to cover her living expenses while she looks for work and/or attempting to establish a career in the real estate industry. This is true even if, as noted *supra*, the balance on the Bank of America Card is the only part of the Debts that remains outstanding. The Court, therefore, concludes that the Defendant has carried her burden under §523(a)(2)(A) of the Bankruptcy Code.

### *2. Section 523(a)(15)(B)*

35. Alternatively, §523(a)(15)(B) of the Bankruptcy Code requires the Court to balance the benefit to the Defendant against the detriment to the Plaintiff resulting from a discharge of the Defendant's liability for the Debts. This assessment of benefit and detriment "implicates an analysis of the totality of the circumstances, not just a comparison of the parties' relative net worths." *In re Gamble*, 143 F.3d at 226; *Oswald v.*

*Asbill (In re Asbill)*, 236 B.R. 192, 198 (Bankr. D. S.C. 1999); *In re Morris*, 193 B.R. 949, 954 n.8 (Bankr. S.D.Cal. 1996); *In re Hill*, 184 B.R. 750, 756 (Bankr. N.D. Ill. 1995). Some courts consider the following non-exclusive list of factors when balancing the equities under §523(a)(15)(B):

a. The amount of debt involved, including all payment terms;
b. The current income of the debtor, objecting creditor and their respective spouses;
c. The current expenses of the debtor, objecting creditor and their respective spouses;
d. The current assets, including exempt assets of the debtor, objecting creditor and their respective spouses;
e. The current liabilities, excluding those discharged by the debtor's bankruptcy, of the debtor, objecting creditor and their respective spouses;
f. The health, job skills, training, age, and education of the debtor, objecting creditor and their respective spouse;
g. The dependents of the debtor, objecting creditor and their respective spouses;
h. Any changes in the financial conditions of the debtor and the objecting creditor which may have occurred since the entry of the divorce decree;
i. The amount of debt that has been or will be discharged in the debtor's bankruptcy;
j. Whether the objecting creditor is eligible for relief under the Bankruptcy Code; and
k. Whether the parties have acted in good faith in the filing of the bankruptcy and the litigation of the §523(a)(15) issues.

*See, e.g., In re Whittaker*, 225 B.R. at 143-44; *In re Windom*, 207 B.R. 1017, 1023 (Bankr. W.D. Tenn. 1997); *In re Carlisle*, 205 B.R. 812, 818 (Bankr. W.D. La. 1997).

36. Here, the Plaintiff's current salary is more than three times the highest annual salary the Defendant has ever earned. The Plaintiff's income allows him to maintain two homes in the Dallas area while relocating to Houston. Moreover, the Plaintiff's disposable income will increase when he sells the Richardson Home, which was listed for sale at the time of Trial. If the Defendant were required to repay the Debts,

he might be forced to sell the Denton Home at a loss, but he would nonetheless continue to maintain a relatively high standard of living.

37.     In contrast, the Defendant has never earned enough on a monthly basis to pay her reasonable monthly expenses, even when her obligation on the Debts is excluded from the analysis.  The Defendant owns no real estate and has no significant assets with which to pay her debts.  At the time of trial, she was living in an income-restricted apartment complex and had been paying her basic living expenses by borrowing money from her mother and incurring credit card debt.

38.     The Defendant had no income at the time of trial other than the child support payments she was receiving from the Plaintiff.[6]  Although the Defendant had recently obtained a realtor's license, she had not yet earned any money as realtor.  Even if the Defendant had been earning as much as she has ever made at the time of trial, she would have been unable to pay her basic monthly expenses if she were forced to repay the Debts.

39.     The Defendant acted in good faith in filing for bankruptcy.  The Plaintiff has likewise acted in good faith in the litigation of this adversary proceeding.  However, based on the totality of the circumstances, the Court concludes that the Defendant has established that the benefit to her of discharging her liability for the Debts outweighs the detriment to the Plaintiff.

### III. CONCLUSION

The Defendant has established the exceptions to non-dischargeability listed in 11

---

[6] The Court notes that, according to the guidelines maintained by the U.S. Department of Heath and Human Services, the official poverty line for a family of three is currently $17,170.  *See* 2007 HHS Guidelines, http://aspe.hhs.gov/poverty/index.shtml.

U.S.C. §523(a)(2)(A) and (B). Accordingly, the Defendant is entitled to a judgment denying the relief the Plaintiff seeks in the Complaint. The Court will enter a separate Judgment consistent with these Findings of Fact and Conclusions of Law.

Signed on 8/28/2007

_Brenda T. Rhoades_    MD
HONORABLE BRENDA T. RHOADES,
UNITED STATES BANKRUPTCY JUDGE